IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MIKE'S TRAIN HOUSE, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BROADWAY LIMITED IMPORTS, LLC <br> AND <br> ROBERT GRUBBA <br><br> Defendants. | Case No. |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Mike's Train House, Inc. ("MTH"), by its attorneys, complaining of Defendants respectfully set forth and allege:

### NATURE OF ACTION

1. MTH brings this complaint pursuant to the Patent Laws, 35 U.S.C. §§ 1 *et seq.*, against defendants for infringement of two United States Patents owned by MTH.

### THE PARTIES

2. Plaintiff MTH is a Maryland corporation with a principal place of business at 7020 Columbia Gateway Drive, Columbia, Maryland, 21046.

3. Defendant Broadway Limited Imports, LLC ("Broadway Limited") is a corporation with its principal place of business at 9A East Tower Circle, Ormond Beach, FL 32174. It sells model trains throughout the United States, including in this judicial District.

4. Defendant Robert Grubba ("Grubba") is, upon information and belief, the President, chief engineer, and principal shareholder of Broadway Limited. He controls and is the alter ego of Broadway Limited.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338(a).

6. Venue in this judicial district is proper pursuant to 28 U.S.C. §§ 1400(b) and 1391(c). Defendants do continuous and systematic business in this judicial district.

## FACTS

### (A) Description of the Infringement

7. MTH designs and sells model trains under its own name. Its trains are known throughout the United States among model train operators and hobbyists for being authentic scale model replicas of actual historic U.S. trains.

8. MTH is known in the industry for the sophisticated and innovative technology that it uses in its model trains. That technology represents years of research, and the investment of millions of dollars, by MTH. MTH protects its technology through U.S. Patents.

9. Defendants import and sell model trains throughout the United States.

10. At issue in this lawsuit are plaintiff's patents as they relate to synchronizing sound and smoke to the speed of the model train.

11. In historic steam engines, the sound of the engine's "chuffing," and the steam or smoke emitted from the smokestack, were "synchronized" with each other and with the rotation of the wheels, because of the way the trains were designed. As the train's speed increased, and its wheels rotated faster, steam/smoke was emitted in correspondingly faster intervals, and the "chuffing" sound was heard at commensurately faster intervals. Conversely, as the train slowed down, the intervals of the sound and smoke/steam decreased as the rotation of the wheels decreased. An increase or decrease in load also caused these changes in intervals.

12. For years, model train companies, including MTH's competitors such as Lionel, tried without success to invent the technology to enable model trains to simulate the above features of actual steam locomotives. No model train manufacturer was able to do so.

13. MTH was the first to make this technological breakthrough. In 2000, it announced that it had invented such technology. That technology works by way of a microprocessor that synchronizes sound and smoke (and other operating units of the model train as well).

14. As pertains to the present lawsuit, there are two MTH patents that protect against the present infringement by defendants.

15. MTH is the owner by assignment of U.S. Patent No. 6,457,681 B1 ("the 681 Patent"), which was duly and lawfully issued by the United States Patent and Trademark Office on October 1, 2002. The '681 Patent is entitled "Control, Sound, and Operating System for Model Trains." A copy of the '681 Patent is attached as Exhibit A. As this patent summarizes the invention with respect to smoke:

> Yet another feature of the present invention is a smoke unit circuit design that allows smoke (or steam) output to be controlled by the user. In this way, smoke and steam output from the model train can be synchronized to match the operating condition of the train. For example, as the train picks up speed, the amount of smoke or steam output would increase accordingly. Or, if the load on the train increases, a larger amount of smoke will be outputted indicative of the additional power required to move the train. In addition, the smoke puffs let out by the train can be synchronized with the rotation of the wheels and thereby reflect train speed. For example, the smoke unit circuit can be controlled so that each ¼ rotation of the train wheels will result in one smoke 'puff.' Also the smoke unit circuitry can be controlled to 'stream' smoke continuously, even at zero velocity, as do real-life steamer-type trains. Even further, the volume of smoke output can be automatic in relation to train conditions, or it can be manually controlled by the user.

> Many other features are described herein. **For example, sounds may be synchronized to the model train operation, such as engine 'chuff' sounds...**

Ex. A, column 3, lines 34-57 (emphasis supplied).

16. MTH is the owner by assignment of U.S. Patent No. 6, 655,640 B2 ("the '640 Patent") which was duly and lawfully issued by the United States Patent and Trademark Office on December 2, 2003. The '640 Patent is entitled "Control, Sound, and Operating System for Model Trains." A copy of the '640 Patent is attached as Exhibit B.

17. Defendants are infringing, have infringed and contributed to and induced infringement of the '681 and '640 Patents, under one or more sub-sections of 35 U.S.C. §271(a)-(g), including without limitation by making, having made, selling, offer for sale, importing and/or using model electric trains and accessories without MTH's authorization.

18. Defendants recently announced the introduction on numerous of its trains of "Paragon 2: the new benchmark for Premium HO sound-equipped locomotives." Exhibit C hereto. A feature of the Paragon 2 is "Synchronized PUFFING SMOKE with Chuff Sound."

19. The Paragon 2 system, and in particular its "Synchronized Puffing Smoke with Chuff Sound" feature, infringes the two MTH patents listed above and attached as Exhibits A and B. The Paragon system utilizes a microprocessor that synchronizes the sound and smoke features.

### (B) Defendants' Infringement is Knowing and Willful

20. Defendants' infringement is knowing and willful.

21. MTH has marketed model trains which embody the smoke/sound synchronization for a number of years. These trains have been commercially successful and are well known throughout the industry.

22. As early as February, 2000, defendant Grubba acknowledged knowing of MTH's innovation. At the time, he was the chief engineer for MTH competitor Lionel. He wrote to a colleague that "MTH has announced a new and very nice sound/control system. Attached is the press release. According to an interview with Mike [Wolf, co-inventor of the patents and President and owner of MTH], they stopped ordering their old system, and will change to the new system completely by June. What can you find out about the system, where it is being built, etc.?"

23. A prominent article in *Classic Toy Trains*, in May, 2000, featured MTH's "All New Sound and Digital Control System." *Classic Toy Trains* is the most widely read journal in the model train industry.

24. Moreover, defendants, and in particular Mr. Grubba, have a long history of knowingly and intentionally misappropriating intellectual property in the model train industry.

25. In 1999, Mr. Grubba was the chief engineer for Lionel Trains, MTH's major competitor. Mr. Grubba stated that, "Lionel was saddled with an aging and unreliable product line at a time when competitors were improving their offerings." He was referring specifically to MTH.

26. He therefore organized and participated in a scheme to steal over 3,000 of MTH's secret blueprints for designing more than 20 separate model trains.

27. Using these stolen designs, Lionel and its collaborators flooded the U.S. market with thousands trains based on MTH's blueprints, which earned millions of dollars for Mr. Grubba's employer, and was calculated to put MTH out of business.

28. Mr. Grubba sought to erase from the computer hard-drives of both Lionel and its collaborator in South Korea all records of this theft.

29. However, the collaborators were apprehended by the South Korean police, confessed to the crime, and were sentenced to jail.

30. In a subsequent civil lawsuit, a federal jury in Detroit, Michigan rendered a verdict in favor of MTH, based in substantial part on evidence of Mr. Grubba's wrongdoing. *MTH v. Lionel et al,* (No. 00-CV-71729, E.D. Mich.). This case subsequently settled.

31. Subsequently, Mr. Grubba left his position as Lionel's chief engineer, and went to work as chief engineer for a model train company named K-Line Electric Trains, Inc.

32. On July 26, 2005, Lionel filed in Federal Court in the Southern District of New York a complaint stating that Mr. Grubba had stolen Lionel's own trade secrets, and had conspired with Marty Pierson, Lionel's then-current head of engineering, to do so. *Lionel LLC v. K-Line Electric Trains, Inc. et al*, Case No. 05-02337 AP (U.S. Bankruptcy Ct., S.D.N.Y.). A copy of the complaint is Ex. D hereto.

33. Included in those allegations are that Grubba had paid Pierson to steal Lionel's technology for the "TrainSounds System", which Lionel described as providing "Realistic sound effects" for "some of Lionel's most successful products." Ex. D, ¶¶ 27, 83

34. K-Line and Mr. Grubba subsequently settled this lawsuit on terms favorable to Lionel. Pierson independently confessed to his and Grubba's roles in this conspiracy.

35. Mr. Grubba then moved from K-Line to Broadway Limited. He has continued his pattern of wrongfully using competitor's intellectual property, by deliberately infringing MTH's patents, as set forth above. Marty Pierson came to Broadway Limited to work with Grubba to design and produce Broadway's new Paragon 2 Sound and Control System. But instead of doing the research and work on their own, they decided to use MTH's patented technology.

36. MTH has licensed other companies in the model train industry to use the patents in suit.

37. Defendants have intentionally sought to circumvent such licensing. A recent brochure of defendants states that its products are "so affordable because we have been able to reduce our costs significantly by producing our own propriety sound system, **thereby eliminating product licensing fees**..." (emphasis supplied). While it is untrue that defendants have "produced their own sound system," they have indeed sought to "eliminate product licensing fees" by infringing MTH's patents.

## COUNT I – THE '681 PATENT

38. MTH incorporates by references previous paragraphs 1-37 as if fully set forth below.

39. Defendants are infringing and have infringed and contributed to and induced infringement of the '681 Patent under one or more provisions of 35 U.S.C. §§ 271(a)-(g).

40. Defendants' infringement has been and continues to be willful and deliberate.

41. Defendants' infringement of the '681 Patent has caused and is causing irreparable harm to MTH. MTH is entitled to damages in an amount to be determined at trial as a result of defendants' infringement, to entry of an injunction against further infringement by defendants, and to trebling of damages.

## COUNT II – THE '640 PATENT

42. MTH incorporates by references previous paragraphs 1-41 as if fully set forth below.

43. Defendants are infringing and have infringed and contributed to and induced infringement of the '640 Patent under one or more provisions of 35 U.S.C. §§ 271(a)-(g).

44. Defendants' infringement has been and continues to be willful and deliberate.

45. Defendants' infringement of the '640 Patent has caused and is causing irreparable harm to MTH. MTH is entitled to damages in an amount to be determined at trial as a result of defendants' infringement, to entry of an injunction against further infringement by defendants, and to trebling of damages.

## PRAYER FOR RELIEF

WHEREFORE, MTH prays for relief against defendants and requests the Court enter judgment against defendants and in favor of MTH as follows:

A. That the Court hold that each of the '681 and '640 Patents are valid, enforceable, and infringed by defendants;

B. That the Court enter a preliminary and permanent injunction against further infringement of the '681 and '640 Patents by defendants and by defendant Broadway Limited LLC's officers, subsidiaries, parents, agents, servants, employees, attorneys, parents, and affiliate corporations or other business entities, and all other persons acting in concert with them, and their successors and assigns;

C. That the Court order defendants to pay compensatory damages to MTH pursuant to 35 U.S.C. § 284.

D. That the Court find defendants' infringement of each of the '681 and '640 Patents to be willful and enter an order trebling of damages pursuant to 35 U.S.C. § 285.

E. That the Court declare this an exceptional case and award MTH its reasonable fees and costs under 35 U.S.C. § 285;

F.     That the Court enter any other award to MTH it deems just and proper.

## JURY TRIAL

MTH requests a trial by jury pursuant to Fed.R.Civ. P. 38(b) on all issues triable of right by a jury.

Dated:  October 8, 2009

Respectfully submitted,

*/s/ William E. Erskine*
William E. Erskine
Miles & Stockbridge P.C.
10490 Little Patuxent Pkwy.
Suite 300
Columbia, MD 21044
Telephone: (410) 312-6730
Facsimile: (410) 874-1427
werskine@milesstockbridge.com
Federal Bar ID #: 11703

Of Counsel:
Robert LaRocca
Kohn, Swift & Graf, P.C.
One South Broad St., Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968
rlarocca@kohnswift.com