IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<pre>
                              *

MIKE'S TRAIN HOUSE, INC.,     *

      Plaintiff,              *

            v.                *    CIVIL NO.:  WDQ-09-2657

BROADWAY LIMITED IMPORTS,     *
LLC, et al.,
                              *
      Defendants.
                              *

  *    *    *    *    *    *    *    *    *    *    *    *    *
</pre>

MEMORANDUM OPINION

Mike's Train House, Inc. ("MTH") sued Broadway Limited Imports, LLC ("Broadway Limited") and Robert Grubba for patent infringement.  Broadway Limited counterclaimed for invalidity. For the following reasons, Grubba's motion to dismiss and Erskine's motion to withdraw will be granted; Broadway Limited's motions for summary judgment and to strike will be denied; and MTH's motion for leave to file surreply will be granted, and its motions for a preliminary injunction and to strike will be denied.

I.   Background[1]

MTH designs and sells O gauge and HO scale[2] model trains in the United States.  Wolf Decl. I ¶ 1.  Michael P. Wolf is the founder and owner of MTH, and David Krebiehl is the vice president.  *Id*. ¶¶ 1, 8.  Broadway Limited designs and sells primarily HO scale model trains and has sold more HO scale steam engines than any competitor.  *Id*. ¶¶ 29-30, 32.  Robert Grubba is the president and sole partner of Broadway Limited.  Robert Grubba Decl. ¶ 2, Dec. 4, 2009.

In the model train industry, synchronizing the puffs of smoke emitted by the engine's smokestack with the "chuffing" sound of the engine has been a challenge.  Wolf Decl. ¶ 14.  For many years, model trains used mechanical means to emit smoke, and the "chuffing" sound was produced by a sound board in the engine.  *Id*. ¶¶ 16-17.  The lack of synchronization of the smoke, "chuffing" sound, and speed made the models appear unrealistic.  *Id*. ¶ 17.

---

[1]  For the summary judgment motion, MTH's "evidence is to be believed, and all justifiable inferences are . . . drawn in [its] favor."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

[2]  Model trains run on different track gauges; the two most common are "O" gauge and "HO" scale.  Michael P. Wolf Decl. ¶ 25, Nov. 18, 2009 [hereinafter *Wolf Decl. I*].  HO scale trains are about half the size of O gauge models.  *Id*.  MTH has long competed in the O guage market, but it entered the HO scale market four years ago.  *Id*. ¶¶ 26-27.

In 1997, Wolf assembled a team of engineers and designers to create a command control system that would synchronize the train's sound, smoke, and speed like a real train. *Id*. ¶¶ 8-9. Wolf, Krebiehl, and Seitz & Associates developed a functional prototype. *Id*. ¶ 8. By 2000, MTH had an invention that coordinated the sound, smoke, and speed of an O gauge train through integrated electrical circuitry and a microprocessor to mimic a real train. *Id*. ¶ 9, 13.

MTH spent more than three and a half years and $3 million to develop electronically synchronized O gauge trains. *Id*. ¶ 8. From 2001 to 2004, MTH spent an additional $1 million to develop and improve a communication box and remote control system for its trains. *Id*. ¶ 9. Two patents were issued for these projects: (1) Patent No. 6,457,681 was filed on December 7, 2000 and issued on October 1, 2002 ("Patent '681"); and (2) Patent No. 6,655,640 was filed on September 9, 2002 and issued on December 2, 2003 ("Patent '640"). *See* Pl.'s Exs. 7 & 8.

Between 2004 and 2006, MTH spent $1.5 million to adapt the electronic synchronization technology to HO scale trains. Wolf Decl. ¶¶ 9, 27. In June 2006, MTH shipped its first HO scale trains with smoke, sound, and speed coordinated through a microprocessor. *Id*. ¶¶ 9, 27. Today, MTH has an HO scale market share of about five percent and attributes its trains' success to this technology. *Id*. ¶ 31.

In 2009, Broadway Limited announced a new sound and control system called "Paragon2," which "mechanically synchronized smoke output" with wheel movement and "chuffing" sounds. *Id*. ¶¶ 38-40. Wolf purchased and sent a Paragon2 model to Seitz & Associates for testing. *Id*. ¶ 41. Forrest Seitz, president and director of design at Seitz & Associates, determined that the Paragon2 system was not using a mechanical method but an electronic method of synchronization, which infringed several claims of the '640 Patent. Forrest Seitz Decl. & Report ¶¶ 1, 9, Nov. 19, 2009 [hereinafter *Seitz Report*]; *see also id*.

On October 13, 2009, MTH sued Broadway Limited and Robert Grubba for infringement of the '681 and '640 Patents. Compl. ¶¶ 38-45. On October 28, 2009, Broadway Limited announced to its dealers a "New Product Arrival" of engines "with sound and synchronized puffing smoke." Wolf Decl. ¶ 42; Pl.'s Ex. 10. On November 16, 2009, Broadway Limited filed an answer and counterclaims for invalidity of the '681 and '640 Patents, Paper No. 10, and Grubba moved to dismiss for lack of personal jurisdiction and improper venue, Paper No. 13 at 1. On November 20, 2009, MTH filed a motion for a preliminary injunction. Paper No. 15.

On December 11, 2009, Broadway Limited moved for summary judgment on its invalidity counterclaims. Paper No. 23. On January 25, 2010, MTH moved to strike Broadway Limited's reply

to the motion for summary judgment, Paper No. 42, and for leave
to file surreply, Paper No. 43.  On January 26, 2010, Broadway
Limited moved to strike MTH's motion for leave to file surreply.
Paper No. 44.  On February 1, 2010, William Erskine moved to
withdraw as counsel for MTH.  Paper No. 47.

II. Analysis

A.   MTH's Motion for a Preliminary Injunction[3]

MTH has moved to enjoin sales of the Paragon2 line of model
trains by Broadway Limited because they infringe several claims
in the '640 Patent.  Pl.'s Prelim. Inj. Mot. 7.  Broadway
Limited has argued that MTH failed to meet the heightened
preliminary injunction standard of *Winter v. Natural Res. Def.
Council, Inc.*, 129 S. Ct. 365 (2008).  Def.'s Prelim. Inj. Opp.
6-7.

Under 35 U.S.C. § 283, a patentee may seek a preliminary
injunction against an alleged infringer.  The law of the Federal
Circuit governs preliminary injunctions in patent cases, *see
Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 n.12 (Fed.
Cir. 1988), and the issuance of "such an injunction is a matter
largely within the discretion of the trial court," *Titan Tire*

---

[3]  On a motion for a preliminary injunction, the court may weigh
the evidence and make credibility determinations.  *New England
Braiding Co., Inc. v. A.W. Chesterton Co.*, 970 F.2d 878, 884
(Fed. Cir. 1992).

*Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375 (Fed. Cir. 2009).

To obtain a preliminary injunction, MTH must show that: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm absent preliminary relief, (3) the balance of equities favors it, and (4) an injunction is in the public interest. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375-76 (Fed. Cir. 2009) (*quoting Winter*, 129 S. Ct. 374).[4] Because injunctive relief is an "extraordinary remedy," MTH must show that irreparable harm is *likely* and not a mere possibility in the absence of a preliminary injunction. *Winter*, 129 S. Ct. at 375. MTH has not carried that burden.

MTH argues that it will suffer irreparable harm by losses of "market share, goodwill and its reputation as an industry innovator" if Broadway Limited is permitted to sell the infringing Paragon2 trains. Pl.'s Prelim. Inj. Mot. 25. Michael Wolf asserts that if Broadway Limited is allowed to sell its Paragon2 trains, MTH will lose (1) its entire investment in the technology patented in the '640 and '681 Patents, Wolf Decl. ¶ 45; (2) customer goodwill and its reputation as an innovator

---

[4] "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1344-45 (*quoting Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

in the model train industry, *id.* ¶ 46; (3) existing and potential customers, *id.*; (4) market share, *id.* ¶ 48; and (5) it will also suffer price erosion because comparable Paragon2 trains will be sold at lower prices, *id.* ¶ 47. Pl.'s Prelim Inj. Mot. 21-32.

Proof of irreparable harm requires a showing that damages will be inadequate. *See Eli Lilly and Co. v. Am. Cyanamid Co.*, 82 F.3d 1568, 1578 (Fed. Cir. 1996); *Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991).[5] Because potential lost sales revenue is compensable through damages, evidence of such losses is insufficient by itself to support a finding of irreparable harm. *Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679 (Fed. Cir. 1990).[6] Similarly, price erosion-- without evidence that the patentee would be *entirely* forced out of the market by the infringer's lower prices--is not irreparable harm. *Automated Merch.*, 2009 WL 4878643 at *3. Mere speculation about possible market share losses is

---

[5] Following *eBay Inc. v. MercExchange LLC*, 547 U.S. 388, 392-94 (2006), a clear showing of validity and infringement no longer creates a rebuttable presumption of irreparable harm. Accordingly, "the burden is now on the patentee to demonstrate that its potential losses cannot be compensated by monetary damages." *Automated Merch. Sys., Inc. v. Crane Co.*, 2009 WL 4878643, at *3 (Dec. 16, 2009).

[6] "No matter how much evidence of lost revenue [the patentee] presented, this evidence by itself could not support a finding of irreparable injury." *Automated Merch.*, 2009 WL 4878643 at *3.

insufficient evidence of irreparable harm.  *Nutrition 21*, 930

F.2d at 871.[7]

Here, the lone affidavit of MTH's founder and owner,

Michael Wolf, which asserts imprecise and exaggerated potential

losses, does not establish irreparable harm.  First, Wolf's

assertion that MTH will lose its entire $5.5 million research

and $8 million marketing investments if Broadway Limited is

allowed to sell its Paragon2 models is speculation.[8]  Over the

past nine years, MTH has developed technology patented in the

'640 and '681 Patents for use in its O guage and HO scale

models.  Because Broadway Limited does not sell O guage trains,

the value of MTH's investment in that market will not be

affected by Paragon2 model sales.

Next, Wolf has not quantified the expected loss of HO scale

market share but merely asserts that MTH "will lose existing

---

[7]  The Federal Circuit decisions affirming district court
findings of irreparable harm from loss of revenue, loss of
research opportunitites, or irreversible price erosion, *see,
e.g., Altana Pharma AG v. Teva Pharm. USA, Inc.*, 532 F. Supp. 2d
666, 684 n.28 (Fed. Cir. 2007), merely reflect the deferential
standard of review of decisions granting preliminary
injunctions.  The presence of such factors does not require a
preliminary injunction.  *Id.* (*quoting Novartis Corp. v. Teva
Pharm. USA, Inc.*, 2007 WL 1695689, at *27 (D.N.J. June 11,
2007).

[8]  *See Altana Pharma*, 532 F. Supp. 2d at 682 (the patentee's
"exaggerated" argument that its business would be financially
crushed by the alleged infringement was not evidence of
irreparable harm).

customers and potential customers" and its current five percent market share "will be eroded." *Id*. ¶ 46, 48. This speculation about possible economic loss is insufficient evidence of irreparable harm.[9]

Next, Wolf's beliefs that MTH will lose customer goodwill and its reputation as an industry innovator are unsupported. MTH introduced its HO scale trains with its microprocessor in 2006. According to MTH, it continues to be the only manufacturer of HO scale trains with this technology. Thus, notwithstanding the Paragon2 trains, MTH remains an innovator and the first-mover with this technology in the HO scale market.

Finally, MTH has not shown that its anticipated revenue losses cannot be quantified and adequately compensated by damages after trial. As it has not carried its burden of persuasion on the element of irreparable harm, MTH's motion for a preliminary injunction must be denied.

B.    Grubba's Motion to Dismiss for Lack of Personal Jurisdiction

Grubba contends that this Court lacks personal jurisdiction over him under Fed. R. Civ. P. 12(b)(2).[10] *See* Paper No. 13. In

---

[9]   Although Wolf has argued that "lost revenue and market share erosion may . . . make it impossible for MTH to continue to exist in the HO market," no evidence supports this prediction. Wolf Decl. ¶ 48.

[10]   Under Fed. R. Civ. P. 12(h)(1), a party must raise a challenge to personal jurisdiction when "the first significant

a patent infringement case, "the law of the Federal Circuit . . . determine[s] personal jurisdiction." *Rates Tech. Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1307 (Fed. Cir. 2005). The plaintiff has the burden of proving personal jurisdiction. *See* 5B Federal Practice & Procedure, *supra*, § 1351.[11]

To establish specific jurisdiction, a plaintiff must show that: (1) the forum state's long-arm statute permits service of process on the defendant,[12] and (2) personal jurisdiction over the defendant is consistent with due process. *Coyle*, 340 F.3d at 1349. "Maryland has construed [its] long-arm statute to

---

defensive move is made--whether it be by way of a Rule 12 motion or in a responsive pleading." *Rates Tech.*, 399 F.3d at 1307 (*citing* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1391 (3d ed. 2004)). Grubba's motion is timely.

[11] A plaintiff need only make a *prima facie* showing of personal jurisdiction when the district court decides jurisdiction on affidavits and other written materials. *Coyle*, 340 F.3d at 1349. The court accepts the uncontroverted allegations in the complaint as true and resolves factual conflicts in the plaintiff's favor. *Id.*
        Personal jurisdiction may be general or specific. *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1410 (Fed. Cir. 2009). General jurisdiction requires the defendant's "continuous and systematic" contacts with the forum state. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003). Specific jurisdiction arises out of or is related to the cause of action and may exist even if the defendant's contacts with the forum are "isolated and sporadic." *Id.*

[12] State and regional federal court decisions govern the interpretation of a state's long-arm statute. *Graphic Controls Corp. v. Utah Med. Prods., Inc.,* 149 F.3d 1382, 1386 (Fed. Cir. 1998).

authorize the exercise of personal jurisdiction to the full extent allowable under the Due Process Clause." *Mackey v. Compass Marketing, Inc.*, 391 Md. 117, 892 A.2d 479, 486 (Md. 2006).[13] But Maryland courts may not "simply dispense with analysis under the long-arm statute," which is the appropriate first step to determine personal jurisdiction. *Mackey*, 892 A.2d at 493 n.6; *see also Tech. Patents, LLC v. Deutsche Telekom AG*, 573 F. Supp. 2d 903, 910 (D. Md. 2008).

The complaint alleges that Grubba is the president and alter ego of Broadway Limited, a Florida corporation that sells model trains in Maryland. Compl. ¶¶ 3, 4. It further alleges that the "[d]efendants do continuous and systematic business" in Maryland. *Id*. ¶¶ 4, 6. By affidavit, Grubba has denied (1) transacting business or performing work in Maryland; (2) contracting to supply products in Maryland; (3) owning, using, or possessing real property in Maryland; (4) contracting to insure or act as a surety for any person or agreement to be performed in Maryland; and (5) having a place of business in

---

[13] *See also Beyond Sys., Inc. v. Realtime Gaming Holding Co., LLC*, 388 Md. 1, 878 A.2d 567 (Md. 2005) (Because the reach of the long arm statute is coextensive with the limits of personal jurisdiction under the due process clause of the Federal Constitution, the statutory inquiry merges with the constitutional examination.).

Maryland.  *See* Robert Grubba Aff. ¶¶ 4-8.  MTH has not refuted

these assertions.[14]

Because there is no evidence of Grubba's continuous and

systematic contacts with Maryland, MTH must establish specific

jurisdiction.  MTH argues that specific jurisdiction is

established under Maryland Code § 6-103(b)(3)[15] because Grubba

induced Broadway Limited to sell infringing products in

Maryland.  Paper No. 18 at 7.[16]

MTH has not shown an injury resulting from Grubba's acts or

omissions *in* Maryland.  There is no evidence that Grubba induced

the sale of any goods in Maryland, and the mere allegation that

Grubba is the alter ego of Broadway Limited is insufficient for

personal jurisdiction over him.

---

[14]  The sole evidence of Grubba's contact with Maryland is a
webpage printout, advertising Broadway Limited's Paragon2 trains
for sale through a Maryland-based distributor.  Paper No. 18,
Ex. 1.

[15]  Under Maryland's long-arm statute, the court may exercise
personal jurisdiction over a person or his agent who "[c]auses
tortious injury in the State by an act or omission in the
State[.]"  Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(3).

[16]  Under subsection (b)(3), a plaintiff must show that acts in
Maryland gave rise to its claim.  *See Layton v. AAMCO
Transmissions, Inc.*, 717 F. Supp. 368, 370 (D. Md. 1989).
Selling an infringing good to a buyer in Maryland is a tort
here.  *See Beverly Hills Fan Company v. Royal Sovereign Corp.*,
21 F.3d 1558, 1570-71 (Fed. Cir. 1994); *N. Am. Philips Corp. v.
Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994).

Because MTH has failed to show a *prima facie* case of personal jurisdiction, Grubba's motion to dismiss must be granted.

C.    MTH's Motion to Strike

MTH argues that Grubba's second declaration and the *O Gauge Railroading* article--which were appended to Broadway Limited's reply in support of the motion for summary judgment--should be stricken because they were untimely, contain hearsay, and are irrelevant.  Paper No. 42 at 1-3.

Ordinarily, arguments raised for the first time in a reply brief or memorandum will not be considered.  *See SEC v. Pirate Investor*, 580 F.3d 233, 255 n.23 (4th Cir. 2009).  But "the power to decline consideration of such arguments is discretionary, and the courts are not precluded from considering such issues in appropriate circumstances."  *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006).

Broadway Limited's reply merely presented additional evidence for its previous arguments of invalidity.  To the extent that the *O Gauge Railroading* article was presented as proof of publication, it is within an exception to the hearsay rule.  *See* Fed. R. Evid. 801(c).  The article and Grubba's second declaration are also relevant to the content of the prior art.  Accordingly, MTH's motion to strike evidence from Broadway Limited's reply will be denied.

D.  Broadway Limited's Motion for Summary Judgment

   1.  Standard of Review[17]

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club,*

---

[17]  In patent infringement cases, the summary judgment standard of the regional circuit applies. *800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1365 (Fed. Cir. 2008).

*Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

    2.    Declaratory Judgment Jurisdiction Over the
           Invalidity Counterclaims

Under the Declaratory Judgment Act,[18] a court of the United States "may declare the rights and other legal relations of any interested party[.]" 28 U.S.C. § 2201 (2006).[19] A case or controversy is required: i.e., a dispute that is "definite and concrete, touching the legal relations of the parties having adverse legal interests . . . and admit[s] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 1335-36 (*citing MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).[20]

---

[18]  28 U.S.C. § 2201.

[19]  Section 1338 gives the district court subject matter jurisdiction over actions for declaration of non-infringement and invalidity. *See Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 n.3 (Fed. Cir. 2008).

[20]  "[T]here is no bright-line rule for determining whether an action satisfies [this] requirement"; the Court's analysis "must be calibrated to the particular facts of each case." *Id.* at 1336 (internal citations and quotation marks omitted). The Court considers "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (*quoting MedImmune*, 549 U.S. at 127.).

    The Supreme Court's decision in *MedImmune* rejected the "reasonable apprehension of suit" as the sole test for jurisdiction in favor of an "all the circumstances" test. *Prasco*, 537 F.3d at 1336. *MedImmune*'s "more lenient legal standard . . . enhances the availability of declaratory judgment

15

The party claiming declaratory judgment jurisdiction must establish that such jurisdiction existed when the claim for declaratory relief was filed and that it has continued since. *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007).[21]  When a party is charged with patent infringement, there is a case or controversy adequate to support jurisdiction over counterclaims for a declaration of that patent's invalidity.  *Id*. at 1345-46; *see also Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993).  But subsequent events may divest the court of jurisdiction.  *Id*. at 1346.  The burden to raise jurisdiction stripping events "may logically rest with the party challenging jurisdiction . . . but the actual burden of proof remains with the party seeking to invoke [declaratory judgment] jurisdiction."  *Id*. at 1345.

A covenant not to sue in the future for products made, used, or sold in the past can remove actual controversy in the

---

jurisdiction in patent cases."  *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008).  "[P]roving a reasonable apprehension of suit is [now] one of multiple ways that a declaratory judgment plaintiff can satisfy the more general all-the-circumstances test."  *Prasco*, 537 F.3d at 1336.

[21]  "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint [was] filed."  *Benitec*, 495 F.3d at 1345 (*quoting Steffel v. Thompson*, 415 U.S. 452, 459 n. 10 (1974)).

present.[22]  Here, the complaint asserted "infringement of the

'681 and '640 Patents" by the Defendants.  Compl. ¶ 17.  But, in

its opposition to the Defendants' motion for summary judgment,

MTH stated that "it is asserting infringement by [Broadway

Limited] of only claims 4 and 5 of the '681 patent" and promised

---

[22] *See Revolution Eyewear*, 556 F.3d at 1297; *Super Sack Mfg.
Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir.
1995).

Although *Super Sack* applied the "reasonable apprehension of
imminent suit" test that was disapproved in *MedImmune*, the
Federal Circuit's recent decisions are consistent with *Super
Sack*'s holding that "a patentee defending against an action for
a declaratory judgment of invalidity can divest the trial court
of jurisdiction over the case by filing a covenant not to assert
the patent in issue against the putative infringer with respect
to any of its past, present or future acts."  *See Revolution
Eyewear*, 556 F.3d at 1297-98; *Janssen Pharm., N.V. v. Apotex,
Inc.*, 540 F.3d 1353, 1363 (Fed. Cir. 2008); *Prasco*, 537 F.3d at
1341 n.11; *Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527
F.3d 1278, 1296 (Fed. Cir. 2008); *Benitec*, 495 F.3d at 1348-49.

Accordingly, by promising not to sue on the patent at
issue, a patentee may eliminate subject matter jurisdiction over
the alleged infringer's declaratory actions for invalidity and
non-infringement of that patent.  *Revolution Eyewear*, 556 F.3d
at 1297; *Benitec*, 495 F.3d at 1340; *MedImmune, Inc. v.
Genentech, Inc.*, 535 F. Supp. 2d 1000, 1005 (C.D. Cal. 2008)
[hereinafter *MedImmune II*].

If a patentee "shows a preparedness and willingness to
enforce its patent rights" by suing for infringement, the Court
will carefully scrutinize its avoidance of declaratory judgment
jurisdiction by later withdrawing those charges and stating its
intent not to sue; a patentee may not engage in "the kind of
extra-judicial patent enforcement with scare-the-customer-and-
run tactics that the Declaratory Judgment Act was intended to
obviate."  *Revolution Eyewear*, 556 F.3d at 1297-98 (*quoting
SanDisk Corp. v. STMicroelectronics*, Inc., 480 F.3d 1372, 1383
(Fed. Cir. 2007)).  To preclude jurisdiction over invalidity
counterclaims, a covenant not to sue must made *before* resolution
of the underlying infringement action.  *See Benitec*, 495 F.3d at
1347 (*quoting Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340,
1348 (Fed. Cir. 2005)).

"not [to] assert any claims of infringement of the '681 patent against [Broadway Limited]'s past and current product line other than claims 4 and 5."[23]  Paper No. 30 at 15.  Relying on *Super Sack*, MTH has moved to limit Broadway Limited's counterclaims for invalidity to claims 4 and 5 of Patent '681 and Patent '640. *Id*.

Broadway Limited has opposed the limitation of its counterclaim, arguing for jurisdiction to challenge *all* the claims of Patent '681.  Paper No. 37 at 2.  It contends that a *Super Sack* covenant not to sue on *any* claims of the patent in issue is not in this case.  Because MTH is asserting *some* of the claims in Patent '681, Broadway Limited argues that the entire patent is in dispute, and the Court has declaratory judgment jurisdiction over all its claims.  *Id*.  As MTH continues to publically assert that Broadway Limited infringed Patents '681 and '640--without limiting its accusations to certain claims--Broadway Limited contends that there is an "actual case or controversy" as to all the claims in both patents.  *Id*. at 3.

---

[23]  A promise not to sue made in motion papers or briefs, rather than a covenant signed by the patentee, is sufficient to estop the patentee from later bringing an infringement suit.  *Super Sack*, 57 F.3d at 1059.  *See also Benitec*, 495 F.3d at 1343 (promise not to sue in patentee's appellate brief was sufficient to moot invalidity counterclaim); *Hoffman-La Roche Inc. v. Mylan Inc.*, 2009 WL 4796736, at *6 (D.N.J. Dec. 9, 2009) ("Statements of counsel at oral argument and in briefs are binding.").

18

### a.   Effect of a Partial Covenant

Post-*MedImmune*, district courts have differed about the effect of a partial covenant not to sue on declaratory judgment jurisdiction.[24]  Broadway Limited relies on the *Lear Auto* rule that "a covenant not to sue or a voluntary dismissal encompassing less than all of a patent's claims does not divest the court of jurisdiction over a counterclaim of patent invalidity." Paper No. 37 at 2-3 (*citing Lear Auto. Dearborn, Inc. v. Johnson Controls, Inc.*, 528 F. Supp. 2d 654, 672 (E.D. Mich. 2007)).[25]

MTH notes criticism of *Lear Auto* and relies on the rule adopted in *MedImmune II*.[26]  Paper No. 43 at 3 (*citing MedImmune*

---

[24]  "*MedImmune* did not address issues concerning . . . the effect of a covenant not to sue."  8 Donald S. Chisum, Chisum on Patents § 21.02(1)(a)(vii)(B)(5) (MB 2009).

[25]  Because the complaint alleged infringement of all the claims in the patent-in-issue, *Lear Auto* held that an "actual controversy" on the validity of all the claims was not eliminated by a subsequent promise to abandon and never pursue those claims against the defendant.  *Id*. at 674.  *Lear Auto* further reasoned that the timing of the partial covenant--after discovery and a motion for summary judgment on the invalidity counterclaims--was merely "an eleventh-hour attempt to pull the jurisdictional rug out from under a counterclaim that [the patentee] could not defend against on the merits."  *Id*.  The district court retained jurisdiction to determine the validity of claims no longer in issue for infringement.  *Id*.

[26]  Although *Super Sack* did not address partial covenants not to sue, *MedImmune II* found that "[t]he Federal Circuit has not suggested that a different rule should apply where partial covenants are involved."  *MedImmune II*, 535 F. Supp. 2d at 1008. A partial covenant restricts the court's inquiry by mooting counterclaims on patent claims not alleged to have been infringed.  *See id.*

*II*, 535 F. Supp. 2d at 1007-08).[27]  Because promises not to sue are "unquestionably valid," *MedImmune II* determined that the Federal Circuit has "made a policy judgment that [partial] covenants are desirable and should be encouraged" despite their "potential for abuse." *Id*.

This Court finds *MedImmune II* persuasive: a partial covenant may eliminate subject matter jurisdiction for declaratory judgment on invalidity claims within the covenant. *See MedImmune II*, 535 F. Supp. 2d at 1008.  This rule is consistent with the Federal Circuit's requirement that "the existence of an actual controversy must be evaluated on a patent by patent and claim by claim basis." *Hoffman-La Roche*, 2009 WL 4796736 at *2 (*quoting Jervis B. Webb Co. v. S. Sys., Inc*, 742 F.2d 1388, 1398-99 (Fed. Cir. 1984)).  The case or controversy requirement and judicial economy favor narrowing the court's review to those claims actually in issue.  Because MTH's promise not to sue came early in the litigation, the invalidity counterclaims within its partial covenant are moot.

---

[27]  MTH sought leave to file a surreply because Broadway Limited argued for the first time in its reply to the motion for summary judgment that this court has declaratory judgment jurisdiction over *all* its invalidity counterclaims.  Paper No. 43 at 1.  Broadway Limited has moved to strike the surreply.  Paper No. 46 at 1-2.  Because the surreply and the motion to strike the surreply address subject matter jurisdiction over Broadway Limited's counterclaims, this Court will consider the arguments in each.

b.    Scope of a Partial Covenant

"Whether a covenant not to sue for infringement will divest the trial court of jurisdiction depends on the scope of the covenant."[28]  Here, Broadway Limited counterclaimed for

---

[28] *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009); *Benitec*, 495 F.3d at 1347.
    To preclude declaratory judgment jurisdiction, the covenant must be sufficiently broad to eliminate the controversy with respect to the withdrawn or unasserted patent claims. *See Harris Corp. v. Fed. Express Corp.*,--F. Supp. 2d--, 2009 WL 4016108, at *3 (M.D. Fla. Aug. 26, 2009); *Prasco*, 537 F.3d at 1341 n. 11 ("A covenant not to sue is . . . not sufficient to defeat declaratory judgment jurisdiction if signing the covenant does not negate the underlying injury.").  If the covenant "extend[s] to future production and sale of the same products that were the subject of the infringement suit" then there is no actual controversy and no declaratory judgment jurisdiction. *Revolution Eyewear*, 556 F.3d at 1298.
    "A covenant need not extend to hypothetical or speculative future contingencies," *Mylan*, 2009 WL 4796736 at *7, or to "possible infringement on products or services not yet in the marketplace and not yet identified . . . with any specificity," *Barnhardt Mfg. Co. v. Illinois Tool Works, Inc.*, 2009 WL 2498036, at *4 (W.D.N.C. 2009).  "[B]ut it must cover 'planned future activities' in addition to past and present activities otherwise subject to an infringement claim." *Mylan*, 2009 WL 4796736 at *7 n.10 (*quoting Revolution Eyewear*, 556 F.3d at 1297).  A covenant of "absolute immunity forever for anything in relation to the [patent at issue]" is not required to extinguish jurisdiction. *Barnhardt Mfg.*, 2009 WL 2498036 at *4.  But, when the patentee "puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do," declaratory relief is available. *Id*. at 1298 (*quoting SanDisk*, 480 F.3d at 1381).
    The effect of a promise not to sue also depends upon the nature of the claim withdrawn and the defense to infringement asserted.  A patentee who withdraws an independent claim but continues to assert infringement of claims dependent on the withdrawn claims leaves "the entire subject matter of [those] claims at issue" because "infringement of a dependent claim also entails infringement of its associated independent claim[s]."

21

invalidity of all the claims in Patent '681 and moved for summary judgment of invalidity on Patent '681 claims 1-2, 4-6, 9-11, 13-14, 17-18, 26-34, and 47-49.  Am. Answer 10-11; Def.'s Summ. J. 2-3.  In its opposition to summary judgment, MTH has promised "not [to] assert any claims of infringement of the '681 patent against [Broadway Limited]'s past and current product line other than claims 4 and 5."  MTH has asserted, and Broadway Limited does not contest, that claims 4 and 5 are "stand-alone claims of the '681 patent . . . [which] do not depend from any of the withdrawn claims."  Paper No. 43 at 2-3.  MTH's partial covenant has eliminated the controversy as to the validity of claims 1-3 and 6-56 of Patent '618 and focused this litigation on the claims actually asserted to have been infringed.

_Honeywell Int'l Inc. v. Universal Avionics Sys. Corp._, 488 F.3d 982, 995 (Fed. Cir. 2007).  Similarly, claim-specific defenses--such as non-infringement and invalidity--may be precluded by a covenant not to sue on those claims, _see Benitec_, 495 F.3d at 1343, but defenses that implicate the validity of the entire patent--such as unenforceability due to inequitable conduct--will not be precluded.  _See Monsanto Co. v. Bayer Bioscience N.V._, 514 F.3d 1229, 1243 (Fed. Cir. 2008) ("[A] district court's jurisdiction . . . to determine whether there was inequitable conduct in the prosecution of the patents that are otherwise no longer in suit confers on that court jurisdiction to hold such patents unenforceable for inequitable conduct . . . [and] the unenforceability of a patent follows automatically once a patent is found to have been obtained via inequitable conduct."); _Nilssen v. Osram Sylvania, Inc._, 504 F.3d 1223, 1230 (Fed. Cir. 2007) ("Because inequitable conduct with respect to one or more patents in a family can infect related applications, [the Federal Circuit found] no abuse of discretion in the district court's holding the [four patents no longer in suit] unenforceable.").

Accordingly, this Court will only consider Broadway Limited's counterclaims for invalidity of Patent '640 and claims 4 and 5 of Patent '681 on summary judgment.

    3.    Obviousness Counterclaims

Broadway Limited argues that claims 4 and 5 of Patent '681 and claims 1, 2, and 6-13 of Patent '640 are invalid because they were obvious at the time they were made.  MTH argues, *inter alia*, that Broadway Limited has failed to provide expert evidence to establish the level of ordinary skill in the art.  Pl.'s Summ. J. Opp. 9, 12-13.[29]

---

[29]  Under § 103, a patent may not issue when "the difference between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject pertains."  35 U.S.C. § 103(a) (2006).  To assess obviousness, the court must objectively determine: (1) the scope and content of prior art, (2) differences between the prior art and the claims at issue, (3) the level of ordinary skill in the pertinent art, and (4) relevant secondary considerations.  *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406 (*quoting Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966)).  Secondary considerations of obviousness may include "commercial success, long felt but unsolved needs, failure of others," and other circumstances "that would prove instructive."  *Id*. at 406, 415.
    "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *Id*. at 416.  To determine whether there was an apparent reason to combine known elements in the patented fashion, the court may consider (1) interrelated teachings of multiple patents, (2) the effects of demands known to the design community or present in the market, and (3) the background knowledge of a person with ordinary skill in the art.  *Id*. at 418.  There need not be "precise teachings directed to the specific subject matter of the challenged claim," as the court

To show non-obviousness, MTH has provided an affidavit from Kriebiehl, a systems engineer with more than 15 years of experience in the design and development of model trains and their operating systems. Paper No. 29, Ex. 2 (David L. Kriebiehl Aff. ¶¶ 2-3, Dec. 29, 2009). Kriebiehl asserts that a person of ordinary skill in the art in 2000 would have had "a degree in mechanical or electrical engineering and 2-4 years of experience designing model train systems" or "several years of such experience." Krebiehl Aff. ¶ 11. Broadway Limited has accepted Kriebiehl's definition of a person of ordinary skill in the art[30] and has not provided an expert opinion that the claims in issue would have been obvious to such a person in 2000. Instead, it argues that "plain common sense" shows that a combination of elements disclosed in the prior art renders the claims obvious. Def.'s Summ. J. Reply 6.

---

may "take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *Id*.

Once issued, a patent is presumed valid, and the burden is on the challenging party to prove invalidity by clear and convincing evidence. 35 U.S.C. § 282; *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1353 (Fed. Cir. 2003). Carrying the burden of persuasion on factual issues relating to obviousness may be easier when important prior art or information was not considered by the PTO and more difficult when the challenger relies on the same evidence considered by the PTO. 2 Chisum on Patents, *supra*, § 5.06(2). "The ultimate judgment of obviousness is a legal determination." *KSR*, 550 U.S. at 427.

[30]  *See* Def.'s Summ. J. Reply 5.

Under appropriate circumstances, the court may use its common sense to determine that a combination of elements as claimed was obvious to a person of ordinary skill in the art. *KSR*, 550 U.S. at 421. But when the minutiae of technical expertise preclude reliance on common sense, the party alleging obviousness must provide "substantive factual guidance" to establish the competence of a person of ordinary skill in the art.[31] Broadway Limited has the ultimate burden to show "by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007).

Kriebel asserts that the configuration and operations in claims 4 and 5 of Patent '681 would not have been obvious to a person of ordinary skill in the art because: (1) the small size of model trains made it difficult to fit in all the components, e.g. motor, power supply, speed control circuitry, etc.; (2) it was difficult to supply enough power over the rails to provide

---

[31] *See Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005) ("Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony."); Fed. R. Evid. 702 (requiring opinion testimony about matters of "scientific, technical, or other specialized knowledge" to be given by a qualified expert).

the "steady, strong, and uninterrupted" power needed by a microprocessor; and (3) "electronic noise" in complex model train systems can adversely affect integrated circuit operations. *Id*. ¶¶ 14-16.

Because the solution was "not so simple as to convert everything to integrated circuitry" and MTH's invention broke with "industry convention," Krebiehl concluded that the Patent '681 claims would not have been obvious to one skilled in the art of train design in 2000. *Id*. ¶¶ 15, 26. Krebiehl has also explained the prior art cited by Broadway Limited and distinguished each reference from the claims at issue in Patents '618 and '640. *Id*. ¶¶ 20-25. In its reply, Broadway Limited acknowledged several distinctions noted by Krebiehl and failed to offer its own expert testimony to refute Krebiehl's non-obviousness opinion.[32]

Toy train design is not within the "common sense" capacity of this court. Broadway Limited has failed to bear its evidentiary burden of providing expert testimony to establish the competence of a person of ordinary skill in the art, explain

---

[32] A second declaration from Robert Grubba, attached to Broadway Limit's reply to the motion for summary judgment, explains the state of technology in the model train industry in November 1998. Paper No. 37, Ex. 3. Grubba reviewed only claim 1 of the '681 Patent and found it to be obvious. *Id*. ¶ 14. That claim is no longer in dispute because of MTH's covenant not to sue. None of the claims at issue is discussed in Grubba's second declaration.

the prior art references, and establish the scope of the claims at issue; its attorney's argument is insufficient. Expert evidence is needed to analyze obviousness. Broadway Limited has not shown that a person of ordinary skill in the art would have been motivated to combine the prior art references or that they would have had a reasonable expectation of success in coordinating a model train's speed, sounds, and smoke. Without that evidence, this Court cannot perform the required *Graham* analysis; summary judgment must be denied.

      4.   Anticipation

Broadway Limited argues that Patent '640 claim 14 is invalid under 35 U.S.C. § 102(b) because it was anticipated by the prior art. Def.'s Summ. J. 32-46.

Section 102(b) prohibits a claim for an invention "patented or described in a print publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). "A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." *Verdegaal Bros., Inc. v. Union Oil Co. of California*, 814 F.2d 628, 631 (Fed. Cir. 1987).

Broadway Limited argues that every element and limitation of claim 14 was disclosed in (1) U.S. Patent No. RE38,660 to

Michael Novosel, Kelly Boles, and Vincent S. Fleszewski, III

(the "Novosel Patent"), [33] or (2) the book *Digital Command and

Control: the Comprehensive Guide to DCC* by Stan Ames, Rutger

Friberg, and Ed Loizeaux (the "Ames Book").[34]  Def.'s Summ. J.

43-46.  MTH contends that neither source anticipated claim 14

and has offered Krebiehl's expert evidence.  After evaluating

the disclosures made in the Novosel Patent and the Ames Book,

Krebiehl opined that neither "reference contains all the

teachings of claim 14."  Krebiehl Decl. ¶¶ 47-49.  Because

Broadway Limited has failed to produce expert evidence to refute

Krebiehl's analysis of claim 14, this Court will deny summary

judgment on the anticipation counterclaim.

E.   Erskine's Motion to Withdraw as Attorney

Under Local Rule 101.2.a, counsel for a business entity may

withdraw with leave of court if, *inter alia*, "appearance of

other counsel has been entered."  Because Brian E. Ferguson

entered his appearance on behalf of MTH on December 30, 2009 and

there is no objection to Erskine's withdrawal, the motion will

be granted.

---

[33]  This patent was issued on December 29, 1998 as Patent No.
5,855,004 and reissued on November 23, 2004.  Def.'s Summ. J.,
Ex. C at 1.

[34]  This book was published in 1998.  Def.'s Summ. J., Ex. A.

III. Conclusion

For the reasons stated above, Grubba's motion to dismiss will be granted. Broadway Limited's motions for summary judgment and to strike the surreply will be denied. MTH's motion to file surreply will be granted, and its motions for a preliminary injunction and to strike evidence from Broadway Limited's reply will be denied. Erskine's motion to withdraw as counsel for MTH will be granted.


April 29, 2010                    _____/s/_____
Date                             William D. Quarles, Jr.
                                 United States District Judge