IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MIKE'S TRAIN HOUSE, INC.,

                    Plaintiff,                              Case No.  1:09-cv-02657-JKB

          vs.

BROADWAY LIMITED IMPORTS, LLC
AND
ROBERT GRUBBA

                    Defendants.

## RESPONSE BY PLAINTIFF IN OPPOSITION TO MOTION BY DEFENDANTS TO STAY FOR PATENT RE-EXAMINATION

Plaintiff MTH filed this opposition to defendants' motion to stay this case to await the outcome of an *ex parte* re-examination proceeding before the Patent Office that defendants recently initiated.  Defendants have engaged in a pattern of seeking to delay this case.  This ill-conceived motion to stay is the latest example. Defendants now seek to stay this case for a period of two to four years, while they continue to sell their infringing products.  Their aim is to capture sales using plaintiff's patented technology, to increase market share at the expense of plaintiff, and ultimately to drive plaintiff from the market-place.  And the re-examination they have sought will not prevent them from relitigating the same issues in this Court once the re-examination is concluded.  The motion to stay was not even accompanied by a legal memorandum, as required by Local Rule 105, and should be denied on this basis alone, and for the additional reasons which follow.

73800

## I.  BACKGROUND AND PROCEDURAL HISTORY

### (A)  Nature of the Litigation

This is not a complicated patent case.  Plaintiff and defendants[1] are competitors in the model railroad train business.  Both design and sell model trains in the "HO" gauge market that compete with each other. ("HO" model trains represent one inch of the model for 87 inches of an actual engine).  See docket no. 1.

Plaintiff holds two key patents that are directed to the same technology for using a microprocessor to synchronize smoke, sound and wheel rotation, so that trains sound and appear authentic.  (In other words, the "chuffing" sound from the smokestack corresponds to the wheel rotation, as on a real train.  As the train slows to climb a hill, its chuffing sound, the smoke emitting from the smoke stack, and the engine's wheel rotation all slow together in a "real life" manner through use of a microprocessor).  One patent is the '681 Patent, issued in October, 2002.  The other is the '640 Patent, issued in December, 2003.  More specifically only claims 4 and 5 of the '681 Patent, and claims 1,2, and 6-14 of the '640 Patent are being asserted against defendants in this lawsuit.

Defendants announced to their dealers that in October, 2009 that they would begin selling trains with a "Paragon 2" system that precisely synchronized smoke,

---

[1] The defendants are Broadway Limited, and Mr. Robert Grubba, the President and sole owner of Broadway Limited.  Judge Quarles dismissed Mr. Grubba on the basis the initial complaint contained insufficient allegations as to personal jurisdiction. (Order, docket no. 51).  Plaintiff filed a motion to file an amended complaint to cure these deficiencies on May 20, 2010, with the amended complaint annexed (docket no. 55).  That motion has not been ruled upon and is still pending.

sound, and wheel rotation.  Plaintiff purchased one of the earliest available trains, and had it analyzed by an expert, who confirmed that it infringed plaintiff's patents. (See Wolf declaration, docket no. 15-3, at ¶¶1, 38-44).  Although defendants misleadingly initially claimed their system was "mechanical," expert analysis confirmed that it was in fact the micro-processor based technology that plaintiff has patented.  (*Id.* ¶¶39-41).  Plaintiff promptly filed this lawsuit. (Docket no. 1).  In answering the complaint, defendants abandoned any pretense that their system was "mechanical" and admitted that the Paragon 2 system uses a microprocessor to synchronize smoke, sound, and wheel rotation.  (Docket nos. 10 and 17, ¶19). Plaintiff brought a motion for preliminary injunction.  (Docket no. 15).  Judge Quarles denied it on the basis that plaintiff had an adequate remedy in damages. (Docket no. 50).  Since that time, defendants have increased each month their sales of infringing products, and plaintiff sustains greater injury. See the declaration of plaintiff's President, Mr. Wolf, Ex. A hereto.

While defendants only began to sell their infringing products in 2009, they have known of plaintiff's patents since they were issued in 2002 and 2003, respectively, and have known of the advanced microprocessor technology since plaintiff introduced it into the marketplace in 2001. (Docket no. 1, ¶¶13, 22-23). Defendants' President and owner, Mr. Grubba, was at the time the Chief Engineer for Lionel Trains, and was keenly aware of plaintiff's technological advances.  (*Id.*). Plaintiff contends that his decision in 2009 to sell an infringing product was intentional and deliberate.  (Wolf declaration, docket no. 15-3, ¶¶32-37, 50-59).

73800                                                        3

The trial of all issues will probably involve three to five witnesses per side, and can easily be completed in a single week of trial time.

When defendants answered plaintiff's interrogatories, in July, 2010, they indicated there were only a discrete number of models which had the Paragon 2 system, as follows (see docket no. 62-2):

| | |
|---|---|
| NYC Hudson | – 3/24/2009 to present |
| N & W Y6b | – 10/27/2009 to present |
| Reading T1 | – 6/23/2010 to present |
| PRR Ilsa | – 3/25/2010 to present |
| PRR Q2 | – 2/8/2010 to present |

This number has increased since then, see Wolf declaration, Ex. A hereto. However, the reality is that two claims from one patent, and 11 claims from the second patent, are being asserted against the Paragon 2 system which defendants are incorporating into their trains, in a case where plaintiff has a strong basis for asserting infringement.

Defendants are seeking to defend the litigation on the basis that plaintiff's patents are invalid because they were "anticipated" by "prior art" and/or are "obvious" in light of that prior art. Their main item of prior art is a book by a Mr. Ames. Defendants moved for summary judgment on this basis on December 11, 2009 (docket no. 23). Judge Quarles denied the motion by Opinion and Order entered April 29, 2010 (docket no. 51).

### (B)     Defendants' Efforts to Delay the Litigation Through a Prior Motion for Stay

Because it is directly relevant to whether defendants are entitled to the lengthy "stay" they currently seek, it is important to understand defendants' efforts

to stall and delay this lawsuit up to this point.  The case was filed in the fall of

2009.  In May, 2010, following the adjudication of the preliminary injunction motion

and defendants' motion for summary judgment, this Court entered a scheduling

order for completion of all discovery and for trial.  (Docket no. 54).  All non-expert

discovery was to be completed by October 15, 2010. (*Id.,* ¶B(1)).  All expert discovery

was to be completed by December 10, 2010. (*Id.* ¶B(2)).  Claim construction matters

were to proceed during the summer and fall of 2010, culminating in a joint claim

construction chart in November, 2010. (¶(C)(7).  There was to be one trial of all

issues.  Any modifications of this schedule were required to be submitted by May

21, 2010. (¶(A)(2).

However, in July, 2010 – long after the date to modify this Order had expired,

and just as defendants were due to answer plaintiffs' first set of interrogatories and

respond to the first set of requests for document production – defendants suddenly

filed a motion to "stay" and "bifurcate" all discovery on damages and willfulness.

(Docket no. 61, July 28, 2010).  This motion was a clear violation of the Scheduling

Order, because this kind of relief had to be sought before May 21, 2010.  It is also

contrary to the clear weight of authority from this District and every other.

Defendants' motion sought two trials, before two separate juries, on the issue of

"liability" and "damages/willfulness," which was not remotely justified for this

uncomplicated case.  Further, defendants sought to "stay" all discovery on damages

and willfulness until the first trial had occurred.  On the basis of this motion –

which has never been granted but remains pending – defendants have refused from

July, 2010 to the present to answer even the most basic information about, for example, how many trains they have sold with the Paragon 2 system installed, what the total sales volume of those trains has been, and when they knew of plaintiff's patents.  As a result, fact discovery could not be completed by the October 15, 2010 deadline, and remains uncompleted.  Interrogatories to defendants remain unanswered.  Document requests to defendants remain unproduced. And the depositions of fact witnesses could not take place, because defendants sought duplicative depositions for each witness – once on liability and a second time on damages.  In short, defendants have effectively derailed the completion of fact discovery.

Nevertheless, aspects of the case are far along.  The parties have completed liability discovery (with the exception of depositions).  The parties have exchanged expert reports, both opening and rebuttal, which include the issues as to which defendants now seek reexamination before the USPTO.  The parties have filed claim construction charts and disclosures of asserted claims (docket nos. 63, 66, 68, 71, 72, 73).  The Markman hearing is scheduled for March 25, 2011. (Docket 54, p.7, ¶C(8)(f)).  Once the court rules upon the motion to stay and to bifurcate (docket no. 61, 62, 64), the remaining discovery can be completed in a period 30-60 days, and the trial can be scheduled forthwith.

## II.   THE MOTION FOR STAY SHOULD BE DENIED

This sets the backdrop for defendants' current motion, its second motion for a "stay."   A stay of proceedings is an extraordinary remedy.  *Landis v. North*

*American Co.*, 299 U.S. 248, 255 (1936); *Clinton v. Jones,* 520 U.S. 681 (1997).

Defendants have made no showing to justify this extraordinary remedy.  Parallel

patent cases in federal courts and re-examinations are routine.  "The court is not

required to stay judicial resolution in view of the reexaminations." *Viskase Corp. v.*

*American Nat. Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001) (affirming court's

denial of stay).  As Justice Cardozo emphasized, a stay of one legal proceeding to

await the outcome of another proceeding requires that the movant provide "a clear

case of hardship or abuse":

> [T]he suppliant for a stay must make out a clear case of
> hardship or inequity in being required to go forward, if
> there is even a fair possibility that the stay for which he
> prays will work damage to some one else.

*Landis, supra,* 299 U.S. at 255.  And a stay of "indefinite duration in the absence of

a pressing need" is an abuse of discretion.  *Id.*

Defendants' motion is based on the fact that on November 22, 2010 – more

than 13 months after this lawsuit was filed – defendants requested the U.S Patent

and Trademark Office ("USPTO") for an *ex parte* examination of certain claims of

plaintiff's patent '681, and that on January 5, 2011, the USPTO granted the

request. Defendants recently supplemented this motion, asserting they also had

requested the USPTO to re-examine claims of the '640 Patent, and the USPTO also

recently granted this request. (Docket no. 77).

Defendants requested the USPTO to re-examine plaintiff's patents on

substantially the same basis they requested that this Court find plaintiff's patents

to be invalid in their summary judgment motion.  *Compare* docket no. 23, December

11, 2009, and exhibits thereto *with* docket 74-1, pp. 6-7.  In both documents, defendants' principal contention is that a book by Mr. Ames, and other patents that have issued, are supposed "prior art" that renders plaintiff's patents anticipated and obvious.  Plaintiff answered this contention, in opposing summary judgment. (Dockets 29-1, 29-2, and 30).  As stated above, Judge Quarles denied defendants' motion.  Docket no. 50, April 29, 2010, at pp. 23-29, and docket 51.

Having failed to persuade this Court, defendants waited from April until November to shop their unfounded contention to the USPTO, converting their summary judgment motion into a request for *ex parte* re-examination.

### (A)   The *Ex Parte* Re-Examination Will Cause a Delay of 2 to 4 Years, And Not Bind Defendants

There are two types of patent re-examinations.  One is an "*ex parte*" re-examination. It is provided for in 35 U.S.C. §§301-307.  That is the type of re-examination defendants sought and obtained.  The other type is termed an *"inter partes"* re-examination, provided for in the 1999 Patent Act, and codified at 35 U.S.C. §§311-318.  The distinction is important, because courts often deny stays, where, as here, the re-examination is an *ex parte* one, because it does not bind the defendants, as discussed below.

An *inter partes* re-examination is conducted more in the nature of an adversary proceeding, and would be binding on the defendants herein.  If the USPTO upheld the challenged claims of the '681 and '640 Patents, that would, as a matter of law, foreclose the defendants from questioning in this lawsuit any issue they raised or could have raised in the patent re-examination proceeding.  35 U.S.C.

§315(c). That is no doubt why defendants chose the *ex parte* re-examination route because it is essentially "risk free" to defendants, and allows them the proverbial "second bite at the apple."[2]

Defendants' motion trumpets that the USPTO has "determined" there was a "substantial new question of patentability."  *See* defendants' motion, docket 74, ¶3. However, statistics published by the USPTO show that it almost always grants *ex parte* re-examination requests.  They are granted **92% of the time they are requested**.  See Ex. B hereto, ¶5(a).[3]  And the language used by the USPTO here is the mandatory statutory language that is used in every such re-examination.  Placed in that context, there is no surprise.  Indeed, it would have been very surprising if the USPT0 had **not** granted the defendants' requests – that happens only 8% of the time.

However, the same USPTO statistics show there is only a **13% chance** that defendants will succeed in showing that all claims they challenge are invalid.  *See* Ex. B, ¶10(b)(2).  Hence, defendants' probability of success is quite low.

There are very substantial delays in *ex parte* reexaminations.  As Judge Newman of the Federal Circuit stated in *Fresenius U.S.A., Inc. v. Baxter International,* 582 F.3d 1288, 1305-1306 (Fed. Cir. 2009), "if routinely available to delay the judicial resolution of disputes, the [re-examination] procedure is subject to

---

[2]  Defendants could have chosen either.  *Inter partes* re-examination are limited to patents filed after November 29, 1999.  Both the '681 and '640 Patents were filed after that date.
[3]  Ex. B can be found on the internet at:
http://www.uspto.gov/patents/stats/EP_quarterly_report_Dec_2010.pdf

inequity, if not manipulation and abuse, though the delays inherent in PTO activity." Judge Newman noted that "as of the third quarter of 2009, **the average pendency for ex parte reexaminations is 36.1 months…**" (emphasis supplied).

Judge Quarles denied a stay pending patent re-examination (even though the stay was sought by the patent holder itself). *Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C. LLC,* 464 F.Supp.2d 481, 483-86 (D.Md. 2006), citing cases that reexaminations can take anywhere from 21 months to 3 years. *Id.* at 485.

Exhibit B (the latest USPTO statistics) shows as of December, 2010, the average pendency for an *ex parte* reexamination in the Patent Office is **25.1 months.** (Ex. A, ¶7(a). There is a statutory right to appeal to the Board of Patent Appeals from an adverse decision. 35 U.S.C. §306. When this appeal time is added, the total time is doubled. Recently, a Court that denied a stay of the patent case for an *ex parte* re-examination, found that that "the reexamination process averages 25.4 months to complete, and the appellate process averages 24 months to complete." *eComsystems Inc. v. Shared Marketing Services, Inc.,* 2011 WL 280942 *4 (M.D.Fla. Jan. 26, 2011). Hence, defendants seek a stay of potentially four years duration.

The Court in *Fusilamp LLC v. Littelfuse, Inc.,* 2010 WL 2277545 *5 (S.D. Fla. June 7, 2010) held that this indefinite, lengthy stay for reexamination violated *Landis,* pg. 7 *supra.* "In sum, the length of the stay, if issued in this case, appears to be indefinite, and as such, is immoderate and unlawful."

**(B)     The Motion Should Be Denied for Violating Local Rule 105**

Defendants' motion assumes that every time the USPTO grants an *ex parte*

re-examination request, a stay should automatically issue.  But that would mean a

stay should automatically issue 92% of the time, with no inquiry whatever.  That

would indeed turn *Landis* on its head.  As one Court stated in denying a stay, a rule

that stays should routinely be granted for re-examinations would "invite parties to

unilaterally derail timely patent case resolution by seeking reexamination."

*Soverain Software LLC v. Amazon.com, Inc.*, 356 F.Supp.2d 660, 662 (E.D.Tex.,

2005).  "The potential for use of the reexamination process as a dilatory tactic must

be considered."  *Nidec Corp. v. LG Innotek Co., Ltd.,* 2009 WL 3673433 *6 (E.D.Tex.

April 3, 2009).

Local Rule 105 requires a party to file, with a motion, a legal memorandum

with reasoning and legal authorities that support the motion:

> 105.  **Memoranda Required;** Number of Copies
>
> Any motion and opposition to a motion shall be filed with the Clerk and be
> accompanied by a memorandum setting forth the reasoning and authorities
> in support of it.

(Emphasis supplied).  Defendants filed no legal memorandum of any kind.  While

this flouting of the Local Rules would be unsupportable in any circumstance, it is

particularly egregious here where defendants now seek to derail this lawsuit for 24

to 48 months.  This violation requires that defendants' motion be denied with

prejudice.

(C)    A Stay Will Harm Plaintiff

Courts deny stays pending patent re-examination where, as here, the parties

to the federal patent suit are direct competitors in the market place, because it

would be inequitable to permit defendants to continue to sell their infringing

products for a lengthy period while the federal court stays its hand.  That is

particularly true where, as shown in plaintiff's declaration, defendants have been

recently increasing their sales of the infringing Paragon 2 trains and indeed

emphasizing the infringing device prominently on their website. (Ex. A and screen

shot of website attached thereto).  This is set against a backdrop where the evidence

shows that defendants have been seeking to drive plaintiff from the  market, and

are using the sales of the infringing Paragon 2 trains to do so.  (See initial

declaration of Mr. Wolf, docket no. 15-3, at ¶¶30-49).

In *eComsystems* (p. 10 above), there were five patents in suit.  The

defendants requested *ex parte* re-examination of all five patents, and all were

granted. *Id.* at *1.  Defendants moved for a stay.  The Court denied the stay, holding

it would be of "undue prejudice" to the plaintiff.  2011 WL 280942 *4. The Court

noted that plaintiff and defendants were direct competitors:

> Courts have recognized that where the parties are direct
> competitors, a stay would likely prejudice the non-
> movant. *Tesco Corp. v. Weatherford Int'l, Inc.,* 599
> F.Supp.2d 848, 851 (S.D. Tex. 2009).  In such situations,
> stays are denied where there is concern that the patent
> owner will be irreparably harmed because the accused
> product will continue to gain market share during the
> pendency of the stay.

*Id.* at *4.  As Judge Covington found, "[The defendant] gives no indication that it will cease its sales of the allegedly infringing products during the course of the five reexaminations."  *Id.*  Here, defendants' motion has not represented they will suspend all sales of Paragon 2 trains during the re-examinations.

As the Court in *Adaptor v. Sealing Systems, Inc.,* 2010 WL 4236875 **3-4 (E.D. Wis. Oct. 21, 2010) noted, in denying a stay for re-examination, the "essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent" (*quoting Accumed LLC v. Stryker Corp.,* 551 F.3d 1323, 1328 (Fed. Cir. 2008).  Allowing the competitor a lengthy stay of the judicial proceeding contravenes this fundamental right:

> Given that the reexamination could take two years before litigation even begins, not including any time possibly spent appealing such decision, the potential delay alone is enough to suggest loss of market share and eroded prices in an alleged infringer is allowed to continue its practices in the meantime…A possible two year delay before evening beginning the process of vindicating that essential [patent right to exclude] weighs heavily here [against granting the stay].

Many courts have denied stays for reexamination where they are sought by competitor/defendants, on the basis they would unfairly disadvantage the plaintiff/patent holder.  Other recent examples include:  *F5 Networks, Inc. v. A10 Networks, Inc.,* 2010 WL 5138375 *3 (W.D. Wash. Dec. 10, 2010) (during reexamination, plaintiff would be "losing market share as well as goodwill and reputation" to defendant);  *Alps South LLC v. The Ohio Willow Wood Company,* 2010 WL 2465176 *1 (M.D. Fla. June 16, 2010); *Tesco Corp v. Weatherford Int'l Inc.,* 599 F.Supp.2d 848, 851 (S.D. Tex. 2009); *Nidec Corp. v. LG Innotek Co., Ltd.,*

2009 WL 3673433 *4 (E.D.Tex. Apr. 3, 2009); *O2 Micro International Limited v. Beyond Innovation Technology Co., Ltd.,* 2008 WL 4809093 *2 (E.D. Tex. Oct. 29, 2008) ("Plaintiffs contend that a stay would delay the possibility of them obtaining an injunction to prevent ongoing infringement of their patents by defendants…The parties are direct competitors in the market and a denial of timely enforcement of the plaintiff's patent rights does indeed unduly prejudice the plaintiff"); *Innovative Office Prods, v. SpaceCo, Inc.,* 2008 WL 4083012 ** 3,4 (E.D.Pa. Aug. 28, 2008); *I-Flow Corp. v. Apex Medical Technologies, Inc.,* 2008 WL 2078623 **1, 3 (S.D. Cal. April 15, 2008); *Cooper Technologies Co. v. Thomas & Betts, Corp.,* 2008 WL 906315 *1 (E.D.Tex. Mar. 31, 2008).

The Court in *F5 Networks, Inc., supra*, was also persuaded to deny the stay by the more general prejudice that, during a lengthy stay, there is "the increasing likelihood that, between now and the point several years from now when the reexamination is concluded and the litigation resumed, witnesses will become unavailable and memories will fade, a further prejudice to Plaintiff."  2010 WL 5138375 at *3.

### (D)      Re-Examination Will Not Simplify Issues

Numerous courts have held that an *ex parte* re-examination will not simplify issues – and certainly not enough to justify a stay of the federal proceeding – because the chances of invalidating the patent are so low, and the outcome is not binding on the defendants.  Here, defendants have sought re-examination of many claims of both the '681 and '640 patents (indeed far more claims than are in suit in

this action).  Therefore, to actually invalidate the claims at suit herein, defendants would almost have to guarantee invalidating all re-examined claims of both the '640 and the '681 patents.  Statistically, there is an 87% chance they will fail. (Ex. B, ¶10(b)(2)).  For example if, upon re-examination, the USPTO invalidated  claims 1,2, 6-34, 47-51 and 56 of the '681 Patent (claims that are included in the re-examination), that would have no effect on this lawsuit, because only claims 4 and 5 of that patent are being asserted herein. And if the USPTO upheld claims 4 and 5, that would have no effect on defendants' efforts to re-litigate the validity of those claims in this lawsuit, because an *ex parte* re-examination proceeding does not bind the defendants.

As Judge Quarles concluded, in denying the stay in *Unilin Flooring, supra,* "It is more likely, however, that the claims will not be totally cancelled, given the statistics cited above.  As a result, even after reexamination, invalidity will continue to be issue so a stay would not preserve many resources."  464 F.Supp.2d at 486.

For these reasons, Court have denied motions to stay, holding that they do not really "simplify the issues" of the federal patent proceeding.  In *Adapter Inc. v. Sealing Systems, Inc., supra,* for example, the Court held that "the subject matter of the '533 patent is not overly complex", and that an *ex parte* re-examination would not simplify the federal proceedings. "Instead, it seems that waiting a possible two years for simplification will only drag the case out longer than necessary."  2010 WL 4236874 *3.

In *eComsystems, supra,* the Court "does not find that judicial economy will be served by a stay because the pending *ex parte* reexaminations of the patents-in-suit will leave [defendants] free to relitigate the exact same issues before this Court." 2011 WL 280942 *3. The Court continued:

> And whereas the estoppels effect of an *inter partes* reexamination can serve to reduce the prejudice to the nonmovant, they are not implicated here because the patents-in-suit are undergoing *ex parte* reexaminations, which do not preclude [defendants] from relitigating the same issues in the district court. [citations omitted]. Accordingly, the Court determines that the denial of timely enforcement of [plaintiff's] patent rights does indeed cause [plaintiff] undue prejudice.

*Id.* at *4.  *Accord, F5 Networks, Inc. v. A10 Networks, Inc., supra,* 2010 WL 5138375 at *2 (in *ex parte* re-examination, defendant "will not be bound by findings of validity or modification, so once again the Court cannot predict if the issues will actually be simplified at the conclusion of the reexamination process"); *Soverain Software LLC v. Amazon.Com, Inc, supra,* 356 F.Supp.2d at 662-663; *Nidec Corp., supra,* 2009 WL 3673433 *5 ("[D]ue to the *ex parte* nature of the proceedings and the lack of a stipulation that in the instant litigation Defendants would not later challenge the asserted patents on grounds considered during reexaminations, Defendants may argue the same issues of invalidity in this Court that are currently before the USPTO…Defendants will not be stopped from arguing the same issues of invalidity in this Court that are currently before the USPTO."); *Regalo International LLC v. Dex Products, Inc.,* 2009 WL 2951107 *2 (D. Minn. Sept. 9, 2009) (no simplification of issues); *02 Micro International Ltd, supra,* 2008 WL 4809093 *2.

In *Oracle Corp v. Parallel Networks, LLP.,* 2010 WL 3613851 *2 (D.Del. Sept. 8, 2010) the Court denied the motion for stay, noting that infringement would have to be tried in the federal lawsuit. "Insofar as the issues left for trial do not completely overlap those typically resolved upon reexamination, a stay is disfavored." Here, too, infringement must be tried. *Accord, Alps South, supra,* 2010 WL 2465176 at *2.

### (E)   The Stage of Proceedings and Defendants' Dilatory Tactics

Courts also deny motions for stays because: (1) the federal suit has progressed to a certain point; and/or (2) defendants appear to be using the motion to stay for tactical advantage. Both are applicable here. Defendants waited from October, 2009, when the lawsuit was filed, until late November, 2010, a period of more than 13 months, to request reexamination. The record shows that Mr. Grubba has known of plaintiff's patented technology since 2000. (Docket no. 15-3, ¶23). Yet he sought no re-examination at any time before he put the Paragon 2 on the market in 2009. He waited until November, 2010, as this case is nearing trial. There is a clear inference of tactical delay.

The May 17, 2010 Scheduling Order (docket no. 54) set forth an orderly sequence for discovery and trial of this case. With the exception of disruptions caused by defendants' flawed motion for bifurcation, pp. 4-6 *supra,* that Schedule has been essentially adhered to, and the case is far along. This Court received a great deal of information about this case in plaintiff's motion for preliminary injunction, affidavits and exhibits thereto, and defendants' motion for summary

judgment (collectively, docket nos. 15, 16, 21, 23, 29, 30, 37). The joint claim construction chart has been submitted. (Docket nos. 66, 68, 71).  Plaintiff has filed its opening claim construction brief. (Dockets 72, 73).  Expert reports (both opening and rebuttal) have been exchanged.  Defendants produced its computer code for the Paragon 2 system.  The Markman hearing is scheduled for March 25, 2011. (Docket 54, p.7, ¶C(8)(f)).

In *I-Flow Corp. v. Apex, supra,* the Court held the stay should be denied when it had progressed to a comparable point as the case at bar: "the plaintiff has served its disclosure of asserted claims and preliminary infringement contentions, defendants have served their preliminary invalidity contentions, the parties have exchanged their preliminary proposed constructions and identifications of extrinsic evidence, documents have been produced and trade secrets have been identified." 2008 WL 2078623 *2.  The "claim construction hearing is approaching quickly."  *Id.* "In light of this posture and the discovery that has been completed to date, this factor weighs in favor of Plaintiff [and against a stay].  *Id.  Accord, Imax Corp. v. In-Three Inc., supra,* 385 F.Supp.2d at 1033 ("both parties submitted expert reports concerning the prior art cited in In-Three's request for reexamination and the validity of the 294 Patent.")

In *Alps South, supra,* the Court denied the motion for stay because "[defendant] did not file a reexamination request until nearly nine months after the case was filed, although it had all necessary information at the commencement of

the case." 2010 WL 2465176 at * 1.  The Court found this meant "a stay would unduly prejudice and disadvantage [plaintiff] by further delaying proceedings."

In *Soverain Software LLC v. Amazon.Com, supra,* the Court denied the stay, and criticized Amazon for having "waited until this case was a year old" to seek re-examination.  356 F.Supp.2d at 662.  Here, defendants waited 13 months.

In *Roy-G-Biv Corp. v. Fanuc Ltd.,* 2009 WL 1080854 * 2 (E.D. Tex. April 14, 2009), the Court denied a motion to stay where "the parties have completed claim-construction briefing" and a *Markman* hearing was scheduled. The same is true here.  "As a result, a stay would force the parties to redo most, if not all, of their claim-construction briefing.  Such a stay would be unfairly prejudicial to [plaintiff]."

In *Nidec Corp. v. LG Innotek, supra,* fact discovery would not close for another six months, and the trial was not scheduled for 13 months.  2009 WL 3673433 *7.  However, the Court found that defendants had delayed requesting reexamination.  They could have requested it when the case was initially filed. *Id.* "Currently, the parties are fully engaged in discovery with a *Markman* and trial date set." *Id.* at *8.  This weighed against a stay.

In *Regalo International LLC v. Dex Products, Inc.,* 2009 WL 2951107 (D. Minn. Sept. 9, 2009), the Court denied a stay pending an *ex parte* re-examination. The Court found that "courts have denied motions to stay when there is an inexplicable or unjustified delay in seeking re-examination" or "when it appears that a stay will serve simply to delay proceedings." *Id.* at *2.  In *Remington Arms Co. v. Modern Muzzleloading, Inc.,* 1998 WL 1037920, at *3 (M.D.N.C. Dec.17, 1998)

the Court denied the stay, holding "[g]enerally, courts are reluctant to stay proceedings where a party is using the reexamination process merely as a dilatory tactic."

**(F)      Defendants Have a Pattern of Bad Faith**

Finally, a stay is an equitable remedy.  The "unclean hands" doctrine "closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *ABF Freight System, Inc. v. N.L.R.B.* 510 U.S. 317, 329 (1994) (Kennedy concurring).  As shown in Mr. Wolf's prior declaration (docket no. 15-3 ¶¶50-59), Mr. Grubba has a history of misappropriating the intellectual property of both plaintiff MTH, and his former employer, Lionel, and misusing that intellectual property for his competitive advantage.  This pattern of unclean hands also counsels against granting a stay.

### III.   CONCLUSION

For the foregoing reasons, defendants' motion for stay should be denied.

Dated:  February 10, 2011                    Respectfully submitted,

/s/ Brian E. Ferguson
Brian E. Ferguson
(Bar No. 10326)
Weil Gotshal & Manges LLP
1300 Eye Street, NW
Washington, DC 20005
Telephone: (202) 682-7000
Facsimile:  (202) 857-0940
brian.ferguson@weil.com

Robert J. LaRocca
(Admitted pro hac vice)
Kohn, Swift & Graf, P.C.
One South Broad St., Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968
rlarocca@kohnswift.com

## CERTIFICATE OF SERVICE

I certify that on February 10, 2011, I caused the foregoing document to be served on all counsel of record through the Court's CM/ECF system.

/s/ Robert LaRocca
Robert LaRocca
(admitted pro hac vice)
Kohn, Swift & Graf, P.C.
One South Broad St., Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968
rlarocca@kohnswift.com

73800